**NATIONAL COALITION AGAINST THE MISUSE OF PESTICIDES, et al., Plaintiffs,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

**Civ. A. No. 87–2089–LFO.**

United States District Court, District of Columbia.

Jan. 11, 1988.

Judgment and Order Feb. 23, 1988.

J. Steven Rogers, U.S. Dept. of Justice, Washington, D.C., Robert Perlis, Office of Gen. Counsel, EPA, Washington, D.C., for defendants.

Paula Dinerstein, Lobel, Novins, Lamont & Flug, Washington, D.C., for all plaintiffs.

Victor M. Sher (member of States of Cal. and Wash. Bars), Todd D. True, Sierra Club Legal Defense Fund, Seattle, Wash., for Sierra Club, Inc. and Northwest Coalition for Alternatives to Pesticides.

Joan M. Ferretti, Robert M. Lustberg, Long Lake, N.Y., for People Against Chlordane.

William Walsh (member of State of Mass. Bar), U.S. Public Interest Research Group, Washington, D.C., for U.S. Public Interest Research Group.

Gerald I. Sommer, Reuben A. Guttman (member of State of Ga. Bar), Service Employees, Intern. Union, AFL–CIO, Washington, D.C., for Service Employees Intern. Union.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiffs have filed a motion for partial summary judgment. Specifically, plaintiffs seek declaratory and injunctive relief invalidating defendants' decision to permit continued use of existing stocks of chlordane and heptachlor, under certain conditions, pursuant to the "Order Accepting Voluntary Cancellation and Authorizing Use of Existing Stocks with Limitations" ("Order Accepting Voluntary Cancellation"), dated October 1, 1987. Plaintiffs have also submitted a supplement to their motion for partial summary judgment in which they raise particular concerns regarding stocks of chlordane and heptachlor that are not subject to the conditions for use prescribed in the Order Accepting Voluntary Cancellation. A hearing was held on December 21, 1987, at which both parties advanced arguments on this issue, among others.

The EPA Order Accepting Voluntary Cancellation supplements the Memorandum of Understanding reached in August, 1987 by the EPA and Velsicol, the United States' sole manufacturer of chlordane and heptachlor. Under the August agreement, Velsicol pledged to cease production of chlordane and heptachlor. That agreement, however, permitted the continued use of existing stocks of those termiticides subject only to the conditions for application found on then-current product labels.

The October Order Accepting Voluntary Cancellation reflects a supplemental settlement reached between the EPA and Velsicol regarding the use of existing stocks of chlordane and heptachlor left unaffected by the August agreement. The October agreement provides for a gradual restriction of use of these termiticides until April 15, 1988, after which time use of the remaining stocks shall be prohibited altogether. The EPA maintains that it entered the agreement after making a finding, pursuant to § 6(a) of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136d(a), that the implementation of a settlement permitting the

> sale or use [of the existing chlordane termiticide stocks] is not inconsistent with the purposes of [FIFRA] and will not have unreasonable adverse effects on the environment.

7 U.S.C. § 136d(a)(1) (1980); see Order Accepting Voluntary Cancellation at 5. FIFRA defines the term "unreasonable adverse effects on the environment" to signify "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb) (1980).

Plaintiffs report, and defendants concede, that the restrictions on use of existing stocks established in the October Order Accepting Voluntary Cancellation have been applied, at the direction of the EPA, only to products bearing Velsicol registration numbers. Plaintiffs note that, although until August of 1987 Velsicol produced all of the chlordane and heptachlor manufactured in the United States, other manufacturers have reformulated Velsicol chlordane into commercial termiticide products that are registered with the EPA under their own individual registration numbers. Hence, plaintiffs contend, the Order Accepting Voluntary Cancellation fails to restrict or even to address the continued use of a potentially vast inventory of chlordane currently marketed under non-Velsicol registration numbers.

Plaintiffs argue that defendants' failure to regulate the use of non-Velsicol chlordane products under the October agreement further supports plaintiffs' motion for partial summary judgment. Plaintiffs emphasize the fact that the EPA adopted the agreement on the strength of the agency's finding under 7 U.S.C. § 136d(a)(1) that continued use of existing chlordane stocks purportedly "[would] not [be] inconsistent with the purposes of [FIFRA] and [would] not have unreasonable adverse effects on the environment." Accordingly, plaintiffs reason, because that finding was in fact made without considering the quantity of chlordane remaining in stockpiles controlled by non-Velsicol registrants, the agency's decision to permit continued use of the chlordane stocks under the agree-

ment constituted arbitrary and capricious action.

Defendants admit that a number of non-Velsicol chlordane registrants remain free, under the October agreement, to market and apply the termiticides in a manner inconsistent with the conditions for use that that agreement imposes upon Velsicol-registered stocks. Defendants argue, however, that the chlordane registered under non-Velsicol reformulator registrations comprises only five to eight percent of the total volume of chlordane distributed, and thus, according to defendants, of the chlordane remaining in existing stocks. *See* Defendants' Response to Plaintiffs' Supplement to Motion for Partial Summary Judgment ("Defendants' Response to Plaintiffs' Supplement") at 3; *see also* Supplemental Affidavit of James V. Roelofs ("Roelofs Affidavit") at ¶ 13.

Defendants contend that the reformulator registrations represent "a very small portion of the chlordane market," Roelofs Affidavit at ¶ 13; consequently, defendants argue, the agency's decision to ignore those non-Velsicol stocks cannot be characterized as arbitrary or capricious. Yet at no place in defendants' pleadings nor in the arguments they advanced during the hearing on December 21, 1987 has the EPA revealed its estimate of the actual amount of chlordane, either bearing Velsicol registrations or not, that remains in existing stocks. Indeed, defendants protest that "the Agency cannot know with certainty the precise volume of existing stocks of the cancelled and suspended products under the non-Velsicol reformulator registrations." Roelofs Affidavit at ¶ 10. It means little for the EPA to assert that the non-Velsicol registered chlordane represents only 5% of a volume of chlordane remaining in existing stocks so long as that total volume remains unidentified.

The EPA defends its decisions in August and in October to permit the continued use of existing chlordane stocks under Velsicol registrations as resting on an agency determination under 7 U.S.C. § 136d(a)(1) that such use is consistent with the purposes of FIFRA. Moreover, defendants maintain,

the EPA has determined under § 136d(a)(1) that the use of those existing stocks with *non-Velsicol* reformulator registrations is consistent with the Act. *See* Defendants' Response to Plaintiffs' Supplement at 3.

Defendants support this assertion with the supplemental affidavit of Edwin F. Tinsworth, Director of the EPA's Registration Division of the Office of Pesticide Programs ("Tinsworth Affidavit"). Tinsworth describes the EPA's policy of accepting non-Velsicol registrants' voluntary cancellations in exchange for agency authorization to continue to sell and distribute existing stocks of the cancelled registrant's chlordane products for one year. *See* Tinsworth Affidavit at 1–2. Tinsworth reports that the difficulty of cancelling these registrations through ordinary, non-voluntary agency procedures, which do not include an automatic grant of a one-year grace period, prompted his conclusion that "the sale and use of existing stocks on non-Velsicol chlordane and heptachlor products will not cause unreasonable adverse effects on the environment." *Id.* at 4. Tinsworth claims that "[t]his finding is consistent with the Agency's obligations under FIFRA Section 6(a)(1)." *Id.* at 4–5.

Tinsworth's conclusion favoring the EPA's policy of exchanging use authorization on existing stocks for voluntary cancellations from non-Velsicol reformulator registrants does not satisfy the agency's obligation under 7 U.S.C. § 136d(a)(1). That provision authorizes

the Administrator [to] permit the continued sale and use of existing stocks of a pesticide whose registration is canceled ... if he determines that such sale or use is not inconsistent with the purposes of [FIFRA] and will not have unreasonable adverse effects on the environment.

7 U.S.C. § 136d(a)(1) (1980). As was settled in *Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 548 F.2d 998, 1012 (D.C.Cir.1976), an EPA Administrator acts arbitrarily who exempts from suspension existing stocks of a suspended pesticide without investigating the volume of the chemical in remaining stockpiles and the feasibility of its disposal. By

58

its own admission, the EPA has excluded an unidentified volume of chlordane and heptachlor bearing non-Velsicol reformulator registrations from its evaluation of the potential adverse environmental effects of continued use of these termiticides, whatever their registrations.

The Court cannot rule on the pending motions for summary judgment, therefore, until the agency supplements its October finding, pursuant to 7 U.S.C. § 136d(a)(1), to reflect an EPA determination as to whether the earlier finding would have been altered had the Administrator accounted for the volume of chlordane and heptachlor remaining in existing stocks and bearing non-Velsicol, reformulator registrations. The agency contends that its October finding justifies its decision to enter an agreement authorizing continued use of Velsicol-registered chlordane stocks through April 15, 1988: it must now establish that it can support the same determination under 7 U.S.C. § 136d(a)(1) with respect to *all* stocks of chlordane, regardless of the number their labels bear.

Accordingly, an Order accompanying this Memorandum grants plaintiffs' motion for partial summary judgment in part and declares that the EPA is obligated under 7 U.S.C. § 136d(a)(1) to make a reasoned finding, supported by *"[s]ome* evidence"[1] as to whether

the continued sale and use of existing stocks of [chlordane and heptachlor] ... is not inconsistent with the purposes of [FIFRA] and will not have unreasonable adverse effects on the environment.

7 U.S.C. § 136d(a)(1) (1980). The Order requires defendants to submit such a finding on or before January 27, 1988. The Court will rule on the pending motions for summary judgment upon consideration of defendants' submission pursuant to the accompanying Order and of plaintiffs' response thereto, if any.

## ORDER

For reasons stated in a Memorandum filed herewith, it is this 8th day of January, 1988 hereby

ORDERED: that plaintiffs' motion for partial summary judgment should be and is hereby GRANTED in part; and it is further

ORDERED: that defendants shall, on or before January 27, 1988, make and submit to the Court a reasoned finding, supported by evidence, as to whether the continued sale and use of existing stocks of non-Velsicol registered, reformulated chlordane and heptachlor "is not inconsistent with the purposes of [FIFRA] and will not have unreasonable adverse effects on the environment," pursuant to 7 U.S.C. § 136d(a)(1); and it is further

ORDERED: that, on or before January 27, 1988, defendants shall supplement the EPA's October finding, pursuant to 7 U.S.C. § 136d(a)(1), that purported to justify continued use of Velsicol-registered chlordane stocks under the EPA Order Accepting Voluntary Cancellation. Defendants' supplement shall reflect an agency determination, supported by evidence, as to whether its earlier finding would have been altered had the Administrator accounted for the volume of chlordane and heptachlor bearing non-Velsicol registrations that remained at that time in existing stocks; and it is further

ORDERED: that plaintiffs may file a response to defendants' submissions ordered herein on or before February 3, 1988.

## JUDGMENT AND ORDER

On October 1, 1987, the United States Environmental Protection Agency ("EPA") entered into a supplemental agreement with Velsicol Chemical Corporation ("Velsicol"), the sole manufacturer of chlordane and heptachlor, providing that sale and use of existing stocks of those products registered to Velsicol will cease on or before April 15, 1988. The October 1 agreement did not address existing stocks of Velsicol manufactured chlordane and heptachlor

1. *See Environmental Defense Fund, Inc. v. Environmental Protection Agency,* 548 F.2d 998, 1012 (D.C.Cir. 1976).

that was registered to others. On January 11, 1988, this Court granted in part plaintiffs' motion for summary judgment, ruling that "EPA's policy of exchanging use authorization on existing stocks for voluntary cancellations from non-Velsicol reformulator registrants does not satisfy the agency's obligation under 7 U.S.C. § 136d(a)(1)." Memorandum of January 11, 1988 at 6. The Court ordered EPA to

> make and submit to the Court a reasoned finding, supported by evidence, as to whether the continued sale and use of existing stocks of non-Velsicol registered, reformulated chlordane and heptachlor 'is not inconsistent with the purposes of [FIFRA] and will not have unreasonable adverse effects on the environment,' pursuant to 7 U.S.C. § 136d(a)(1)....

Order of January 11, 1988 at 1. Defendant subsequently submitted a response to that Order, plaintiffs responded to defendants' response, and further oral argument was held on February 12, 1988.

The Court has considered the briefs and oral argument of the parties and has reviewed and considered the other submissions of the parties including the administrative record and affidavit testimony. There is no genuine issue of material fact so that plaintiffs are entitled to summary judgment as a matter of law on the issue of the continued sale and use of existing stocks of chlordane and heptachlor termiticide products, which are the subject of voluntary cancellations.

In connection with cancellations of one or more uses of a pesticide, including voluntary cancellations, Section 6(a)(1) of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136d(a)(1), requires EPA to permit continued sale or use of existing stocks only "to such extent, under such conditions, and for such uses" which the Administrator determines are "not inconsistent with the purposes of [FIFRA] and will not have unreasonable adverse effects on the environment." FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreason-

able risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." FIFRA § 2(bb), 7 U.S.C. § 136(bb).

An adequate § 6(a)(1) determination must analyze the risks and benefits from the sale and use of existing stocks and determine whether or not such sale and use would be consistent with FIFRA and whether or not such sale and use would pose any unreasonable risk to man or the environment. *See* 7 U.S.C. § 136(bb). Instead, defendants found only that the settlement agreement permitting the use of existing stocks would result in less use (and therefore less risk) than would a proceeding to cancel the pesticide's registration without a suspension of the registration during the proceeding.[1] This finding does not meet the requirements of § 6(a)(1).

What the defendants have done here is indistinguishable in principle from the action of the Secretary of Commerce, recently condemned by our Court of Appeals in *Kokechik Fishermen's Association v. Secretary of Commerce*, 839 F.2d 795 (D.C. Cir.1988). There, the Secretary issued a permit to Japanese fishermen to take northern fur seals even though he could not make, or had not made, a finding, required by statute, as to whether the particular seal population was within its optimum sustainable level. *Id.* at 801. Nonetheless, the Secretary "issued the permit taking the position that as long as it did not *authorize* the taking of northern fur seals he had complied with the [relevant statute]." *Id.* at 801 (emphasis added). Said the Court of Appeals, however, "[t]he result was, in effect, that the permit allowed the Federation to take protected marine mammals for a price—the civil penalties imposed for such takings.... This is a result that the [relevant statute] does not countenance." *Id.*

So here defendants, without making a required finding that sale and use of existing chlordane stocks will not unreasonably endanger man or the environment, have

---

1. The defendants determined that a suspension was not justified.

allowed the continued sale and current use of those stocks for a price—i.e., conditional suspension of production and suspension of some prospective distribution from existing stocks by chlordane registrants. This, FIFRA does not countenance.

Furthermore, defendants have not addressed the appropriate relevant factors, and have not adequately supported or rationally justified a determination that the continued sale or use of existing stocks permitted in the October 1, 1987 Order and the other chlordane and heptachlor voluntary cancellations is consistent with the purposes of FIFRA and would not have unreasonable adverse effects on man or the environment, within the meaning of FIFRA.

The Court has not overlooked EPA's expressed concern about the "possibility" that invalidation of the existing stocks concession for chlordane registrants "could constitute a basis on the part of Velsicol and the other registrants to void the August agreement as well as the voluntary cancellations." Defendants' Response to Plaintiffs' Revised Proposed Judgment and Order (filed Feb. 23, 1988) at 3 n. 1. There will be time enough to deal with such a hypothetical situation when, and if, it materializes.

Accordingly, it is this 23rd day of February, 1988, hereby

ADJUDGED AND DECLARED: that defendants' decision to permit continued sale and use of existing chlordane and heptachlor stocks which are the subject of voluntary cancellation in the absence of the finding required by § 6(a)(1) is arbitrary, capricious, and an abuse of discretion; and it is further

ADJUDGED AND DECLARED: that the provisions of any agreement entered into by defendants (and only such provisions) permitting the continued sale and use of existing chlordane and heptachlor stocks which are the subject of voluntary cancellations including, but not limited to, the provisions of the October 1, 1987 "Order Accepting Voluntary Cancellation and Authorizing Use of Existing Stocks with Limitations," made in accordance with a Supplemental Memorandum of Understanding with Velsicol Chemical Corporation, are contrary to law; and it is further

ADJUDGED AND DECLARED: that the defendants' decision to permit sale or commercial use and commercial application (as distinguished from household and homeowner use and application) of existing stocks which have been the subject of voluntary cancellations is contrary to law; and it is further

ORDERED AND ADJUDGED: that the defendants shall, on or before April 15, 1988, take whatever action is necessary to conform to, and to enforce, the requirements of the law as declared in this Judgment and Order so that on and after April 15, 1988, sales, commercial use and commercial application of existing stocks of chlordane and heptachlor which have been the subject of voluntary cancellations shall cease; and it is further

ORDERED: that plaintiffs' motion for partial summary judgment is, to the extent theretofore stated, GRANTED; and it is further

ORDERED: that defendants' motion for summary judgment is DENIED; and it is further

ORDERED: that there being no just reason for delay in the entry of this Order as a Judgment, and in order to permit its review by the Court of Appeals, the Clerk of Court shall, pursuant to F.R.Civ.P. 54(b), enter this Judgment and Order forthwith in favor of plaintiffs; and it is further

ORDERED: that on March 21, 1988, at 9:00 A.M., there will be a status call to schedule further proceedings on unresolved issues, including the disposition of existing stocks derived from suspended, as distinguished from voluntarily cancelled, registrations.